UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

TINESHA DENISE ADAMS,
            Defendant.

Criminal No. 06-227-4

## DETENTION MEMORANDUM

The Defendant, Tinesha Denise Adams, also known as Neesha, has been charged by

indictment with conspiracy to distribute and possess with intent to distribute one kilogram or

more of phencyclidine ("PCP"), a Schedule II controlled substance, in violation 21 U.S.C. § 846,

21 U.S.C. § 841(a)(1) and § 841 (b)(1)(A)(iv); unlawful possession with intent to distribute and

distribution of one kilogram or more of PCP, and aiding and abetting the same, in violation of 21

U.S.C. § 841(a)(1) and 21 U.S.C. § 841 (b)(1)(A)(iv) and 18 U.S.C. § 2; unlawful distribution of

one hundred grams or more of PCP in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841

(b)(1)(A)(iv); and criminal forfeiture in violation of 21 U.S.C. § 853 and § 853(p).   The

Government requested a detention hearing, which was held on February 16, 2007.  At the

conclusion of the detention hearing, the Court found that the Defendant should be held without

bond.  This memorandum is submitted to comply with the statutory obligation that "the judicial

officer shall include written findings of fact and a written statement of the reasons for the detention." 18 U.S.C. § 3142(i)(1).

## **Findings of Fact**

At the detention hearing, the Government proffered that the Defendant was involved in a conspiracy to import and distribute PCP in the Washington, DC metropolitan area, which took place from approximately September 2005 through at least July 27, 2006. The Defendant was a courier in this scheme, one of a number who transported the PCP from California to Washington D.C. In fact, Ms. Adams made so many trips, other members of the conspiracy nicknamed her "super-courier." Additionally, the Government asserts that the Defendant recruited and supervised others couriers, thus putting her in a leadership role. To bolster this claim, the Government adduced that the Defendant purchased tickets for other couriers for their trips.

Darnell Anthony Jackson and Troy Antoine Hopkins operated the conspiracy, which purchased gallons of PCP from Mr. Tony Fitzgerald Hilt, a member of the L.A. based gang Mona Park Crips. After a purchase, the conspirators and couriers would buy shampoo, lotion, and Listerine, empty the bottles and fill them with PCP. Then couriers would fly from Long Beach Airport ("LGB") to Dulles International Airport ("IAD") carrying a gallon's worth of the bottles in their checked-in luggage. It alleged that the Defendant flew on 12 of the estimated 25 flights between the Washington, DC area to Long Beach, CA from September 2005 through at least July 27, 2006.[1] Once the PCP was in the Washington, DC area, the conspirators would dilute the PCP

---

[1] The flight records indicate that the conspirators used JetBlue, Southwest, and AmericaWest airlines. It is estimated that at least one gallon of PCP was carried back from Long Beach on each trip, which equals about 25 gallons of diluted PCP. One gallon of liquid PCP equals approximately 3.7 kilograms of the drug.

with starter fluid and sell it to wholesalers and distributors at various locations in Washington, DC and suburban Maryland

From 12 bank accounts, the conspirators paid the couriers for their flight, hotel and travel expenses with travelers checks, Western Union transfers, and "MoneyGrams" often purchased from a Shopper's Food Warehouse grocery store, which Mr. Jackson frequents.  For example, on May 21, 2006, Mr. Jackson sent $350 to the Defendant, which the Government claims is consistent with the amount used by the PCP couriers for travel incidentals.   Three days after the May 21, 2006 MoneyGram was sent, at IAD, police approached Ms. Adams and another courier, Lanika Mercedes Franklin and asked to search their luggage.  After the Defendant and Ms. Franklin consented, police found two gallons of PCP in the bags; however, they were not arrested at this time.  During May 2006, a wiretap had been placed on Mr. Jackson's cellular phone.  Through the wiretap, authorities recorded Mr. Jackson discussing the incident with other conspirators and the possibility of bringing the Defendant and Ms. Adams back to California via an alternate route.

In late July, bench warrants were issued for the conspirators and couriers.  The majority of those sought were arrested and are currently detained.  However, Ms. Adams eluded capture even though she knew that she was wanted for her integral role in the conspiracy.  On January 22, 2007 the Defendant was finally apprehended while dropping her child off at daycare in Los Angeles.

## <u>Discussion</u>

The Bail Reform Act of 1984, 18 U.S.C. § 3141 *et seq.* (hereinafter "the Act"), provides, in pertinent part, that if a judicial officer finds that "no condition or combination of conditions will reasonably assure the appearance of the person . . . [or] the safety of any other person and the community, such judicial officer shall order the detention of the [Defendant] before trial." 18 U.S.C.

§ 3142(e).  Danger to the community alone is a sufficient basis upon which to order pretrial detention, if the judicial officer finds by clear and convincing evidence that Defendant's pretrial release would constitute an unreasonable risk of danger to the community.  *United States v. Salerno*, 481 U.S. 739, 755 (1987); *United States v. Perry*, 788 F.2d 100, 113 (3d Cir. 1986); *United States v. Sazenski*, 806 F.2d 846, 848 (8th Cir. 1986).  When, as here, there is probable cause to believe that a Defendant has committed a violation of the Controlled Substance Act for which a maximum penalty of 10 years or more is prescribed, a rebuttable presumption arises that the Defendant constitutes a danger to the community, and no pretrial release condition or combination of conditions may be imposed to assure his future presence in court or to reasonably assure the safety of the community.

Here, the government seeks pre-trial detention on the grounds that the Defendant poses a danger to the community and a risk of flight.  In determining whether there are conditions of release which will reasonably assure the safety of the community, the judicial officer shall take into account the available information concerning (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the Defendant; (3) the Defendant's history and characteristics, including the Defendant's ties to the community; and (4) the nature and seriousness of the danger to any person or to the community which would be posed by the Defendant's release. *See* 18 U.S.C. §3142(g).

The first factor, the nature and circumstances of the offense, favors detention.  The Defendant is charged with conspiracy to distribute  massive amounts of PCP into the Washington, DC area.

The second factor, the weight of the evidence, also favors detention.  The Government

obtained airline records of the Defendant's regular travel between IAD and LGB.  The Government also has records of the Defendant receiving wire transfers of money to defray expenses for travel incidentals. Moreover, witnesses have alleged that the Defendant recruited and supervised other couriers, including the purchase of their plane tickets.

The third factor, the history and characteristics of the Defendant, supports pretrial detention. The Defendant knew she was wanted by the F.B.I. yet remained at large and evaded apprehension. Moreover, after her arrest, she was uncooperative with Pretrial Services giving them incorrect information as to her employment, residence and drug usage. Additionally, the Defendant is a resident of California.

The fourth factor, the nature and seriousness of the danger to the community should the Defendant be released, also favors detention.  Although the instant charges did not involve violent activity, the Defendant was heavily involved in importing a massive amount of PCP, a dangerous and illegal substance that causes violence in the Washington, DC area.

### Conclusion

Based upon consideration of all the evidence and the factors set forth in 18 U.S.C. § 3142(g), the Court concludes that the evidence clearly and convincingly establishes that the Defendant's pretrial release would constitute an unreasonable risk of danger to the community.  The presumption in favor of detention establishes by the statute has not been overcome by the Defendant in this case. Therefore, the government's motion for pretrial detention is granted and the Defendant is to be held without bond pending further actions of this court.

Dated: February__20__, 2007     ____/s/_____
             ALAN KAY
             UNITED STATES MAGISTRATE JUDGE